UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

AUG    2003

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| NMN GROUP, INC.,<br>d/b/a JIMMY TOURS | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL NO. H-02-3832 |
| SHEIKH ESSA ZAYED AL NAHYAN,[1]<br>ALAMANDA LTD. (ROCHESTER), and<br>ALAMANDA LTD. (FLORIDA) | § § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION

Pending before the court[2] is Defendant's Amended Motion to Dismiss Plaintiff's Original Petition for Lack of Personal Jurisdiction.[3] The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Defendant's Amended Motion to Dismiss Plaintiff's Original Petition for Lack of Personal Jurisdiction.

### I. Case Background

This case involves a breach of contract and unjust enrichment claim. The Plaintiff filed its Original Petition in the 164th Judicial District Court of Harris County, Texas, on August 14,

---

[1]    The spelling of Defendant's name varies throughout the record. Such spellings include "Sheikh Issa Al Nahyan," "Sheikh Zayed Al Nahyan," "Sheikh Essa Zayed Al-Nayhan," and "Sheik Al-Nayhan." The court spells Defendant's name as it is found within the text of the materials quoted.

[2]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Docket Entry No. 13.

[3]    Docket Entry No. 26.

1



2002.[4]  Plaintiff then initiated service of process upon Defendant on August 19, 2002.[5]  The facts surrounding Plaintiff's service of process upon Defendant are disputed and, as the subject of the present motion, are discussed in detail in Part III of this opinion.  On October 8, 2002, Defendant filed a Notice of Removal in this court, basing this court's jurisdiction upon diversity of citizenship.[6]

On October 16, 2002, Defendant filed his Answer to Plaintiff's Original Petition previously filed in state court, asserting that the service of process on Defendant was defective, and that this court lacks personal jurisdiction over Defendant.[7]  Defendant then asserted a denial over the remaining allegations.[8]  On February 18, 2003, Defendant then filed his first Motion to Dismiss Plaintiff's Original Petition for Lack of Personal Jurisdiction and Memorandum in Support,[9] to which Plaintiff filed a Response and Memorandum in Support on April 17, 2003.[10]

On May 1, 2003, Plaintiff filed an Amended Complaint adding the claims of defamation, slander, and libel and tortious

---

[4]     Defendant's Notice of Removal, Docket Entry No. 1, Exhibit "B".

[5]     Defendant's Notice of Removal, Docket Entry No. 1, Exhibit "A", Citation and Return of Service.

[6]     See 28 U.S.C. § 1332; Docket Entry No. 1.

[7]     Docket Entry No. 3.

[8]     Id.

[9]     Docket Entry Nos. 10 and 11.  The Motion was filed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

[10]     Docket Entry Nos. 19 and 20.

interference with existing and prospective contracts to its
original causes of action.[11]  Defendant later withdrew his Motion
to Dismiss under Fed. R. Civ. P. 12(b)(2)[12] and on May 2, 2003,
filed an Amended Motion to Dismiss Plaintiff's Original Petition
for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(5).[13]

## II. Standard of Review and Applicable Law

Pursuant to the federal rules, the court is authorized to
dismiss a civil action when service of process is inadequate. Fed.
R. Civ. P. 12(b)(5).  The burden of proof to establish proper
service is on the party on whose behalf service is made. Norlock
v. City of Garland, 768 F.2d 654, 656 (5th Cir. 1985); In re
Arbitration Between: Trans Chem. Ltd. & China Nat. Mach. Imp. &
Exp. Corp., 978 F. Supp. 266, 298 (S.D. Tex. 1997), aff'd 161 F.3d
314 (5th Cir. 1998).  The plaintiff is able to meet this burden by
producing the return of service, which can be accepted as *prima
facie* evidence of how service was effected, and is only overcome by
strong and convincing evidence. O'Brien v. R.J. O'Brien & Assocs.,
Inc., 998 F.2d 1394, 1398 (7th Cir. 1993); Home-Stake Prod. Co. v.
Talon Petroleum, C.A., 907 F.2d 1012, 1017 (10th Cir. 1990);
Hicklin v. Edwards, 226 F.2d 410, 414 (8th Cir. 1955).  Unless some

---

[11]     Docket Entry No. 25.

[12]     Docket Entry No. 26, n.1.

[13]     Docket Entry No. 26.  Although the title of the motion refers to
personal jurisdiction, in his amended motion Defendant argues only that he was
not served with process in accordance with the requirements of Texas state law.
Therefore, the court does not address the issue of personal jurisdiction.

defect in service is shown on the face of the return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce affidavits, discovery materials, or other admissible evidence establishing the lack of proper service. See <u>Nikwei v. Ross School of Aviation, Inc.</u>, 822 F.2d 939, 941 (10th Cir. 1987); <u>Jones v. Jones</u>, 217 F.2d 239, 242 (7th Cir. 1954). Any factual question raised by the affidavits or other evidence in a Rule 12(b)(5) motion should be determined by the court in accordance with Fed. R. Civ. P. 12(d). C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1353. The court finds no Fifth Circuit cases on point with the preceding issues of law, but finds the opinions of the Seventh, Eighth, and Tenth Circuits to be convincing and adopts them accordingly.

The issue of sufficiency of service of process prior to removal is a state law issue. <u>Freight Terminals, Inc. v. Ryder System, Inc.</u>, 461 F.2d 1046, 1052 (5th Cir. 1972). Under Texas state law, a person is usually held to have been personally served if he physically refuses to accept the papers which are then deposited in an appropriate place in his presence or near him where he is likely to find them. <u>Dosamantes v. Dosamantes</u>, 500 S.W.2d 233, 237 (Tex. Civ. App.–Texarkana 1973, writ dism'd w.o.j.). The defendant must also be informed of the nature of the process and of the fact that service is being attempted. <u>Id.</u>; <u>Tex. Indus. v.</u>

4

<u>Sanchez</u>, 521 S.W.2d 133 (Tex. Civ. App.-Dallas 1975, writ ref'd
n.r.e.).

### III. Analysis

Plaintiff in this case holds the burden to establish proper
service. <u>See</u> <u>Trans Chemical Ltd.</u>, 161 F.3d at 314. Plaintiff has
produced the return service on the citation as well as the sworn
affidavits of Plaintiff's process server, Greg Cox ("Cox"), and of
Plaintiff's representative or owner, Jimmy Abouzeinab
("Abouzeinab"), detailing the circumstances surrounding the service
of process upon Defendant.[14] The court must determine, under Texas
state law, whether the service upon Defendant was sufficient as
outlined in the evidence submitted by Plaintiff.[15] <u>Freight
Terminals, Inc.</u>, 461 F.2d at 1052.

The return of service on the citation signed by Cox states
that he served Defendant in person at 3:30 p.m. on August 19, 2002,
at Bush Intercontinental Airport, specifically at the metal
detectors in Terminal 'D'.[16] In his sworn affidavit, Cox declared,
"I followed [Defendant] to George Bush Intercontinental Airport,

---

[14]    Defendant's Notice of Removal, Docket Entry No. 1, Exhibit "A",
Citation and Return of Service; Affidavit of Greg Cox, Docket Entry No. 21; and
Affidavit of Jimmy M. Abouzeinab, Docket Entry No. 22.

[15]    Defendant was allegedly served on August 19, 2002. Defendant removed
this case to federal court on October 8, 2002. Because the service of process
in dispute was effected prior to removal of the case, Texas state law governs the
issue of the sufficiency of that service.

[16]    Defendant's Notice of Removal, Docket Entry No. 1, Exhibit "A".

where I served him in Terminal 'D' at the security gates."[17]  Cox
also stated that:

> "in addition to using the information I had previously
> been given by Jimmy Zeinab [Abouzeinab] regarding a
> description of [Defendant], I was on a cellular phone
> when I saw the person I believed to be [Defendant] at the
> airport."[18]

Cox described Defendant as being "surrounded by two armed guards
dressed in green uniforms, who went with him through the security
gates."[19]  Cox then declared that at that time he described the
person he thought to be Defendant Sheikh Essa Zayed Al Nahyan over
the phone to Abouzeinab, who "stated that the man was [the
Defendant] and that [Cox] should serve him immediately."[20]
According to Cox's affidavit, the events that occurred following
the cellular phone call are as follows:

> "I then immediately approached the man who met the
> description of [Defendant], and called out the name
> 'Sheik Al-Nayhan.'  The man who I believed to be
> [Defendant] turned toward me in response to my calling
> the name 'Sheik Al-Nayhan,' at which time I told him that
> I had court documents for him.  He then turned around and
> started to go up the escalator. With this, I dropped the
> citation and stated, 'You have been served.'  I then
> approached Bassam Nabulsi [Defendant's personal manager]
> and told him that I had served [Defendant], and that he
> should let [Defendant] know what happened."[21]

---

[17]    Affidavit of Greg Cox, Docket Entry No. 21, p. 2, ¶ 2.

[18]    Id.

[19]    Id.

[20]    Id.

[21]    Id. at ¶ 3.

Abouzeinab, in his own sworn affidavit, details the cellular telephone call made to him by Cox on August 19, 2002, during which he guided Cox through a description of Defendant so Cox could accurately identify Defendant accordingly.[22]     Specifically, Abouzeinab declared:

> "On August 19, 2002, Greg Cox called me from his cellular phone and told me that he had followed The Sheikh [Defendant] to George Bush Intercontinental Airport. He stated that he was waiting behind the security gates and saw a man that met the description of The Sheikh. He described the man and the two armed guards that were surrounding him as they were going through the security gates. The man he described exactly met the description of The Sheikh, and the description of the guards was that of the guards of The Sheikh's country. With this, I felt it was clear that the man was The Sheikh. Not only did the man meet The Sheikh's description exactly, the fact that he was allowed to go through the security gates with his armed guards clearly indicated that he was The Sheikh..."[23]

Under Texas state law, Defendant was properly served because he physically refused to accept the papers which were deposited near him where he was likely to find them. C.f. Dosamantes, 500 S.W.2d at 237. As evidenced by Cox in his sworn affidavit, Defendant turned around in response to the calling of his name by Cox, at which time Cox told Defendant that he had court documents for him.[24] The court finds that the evidence presented by Cox that

---

[22]     Affidavit of Jimmy M. Abouzeinab, Docket Entry No. 22, p. 3, ¶ 2.

[23]     Id.

[24]     Affidavit of Greg Cox, Docket Entry No. 21, p. 2, ¶ 3.

Defendant then turned back around and proceeded up the escalator constitutes a physical refusal to accept service of process under Texas state law.

Cox then stated that he deposited the papers on the ground in the airport near Defendant's personal manager, and told the personal manager that Defendant had been served.[25] Cox reiterated in his affidavit that he did not intend to serve Defendant's personal manager but Defendant himself.[26] The court finds that the location in the airport where the papers were dropped, near Defendant's personal manager and in a place where Defendant had once been himself, was an appropriate place to deposit the papers under the circumstances, and that the Defendant would have been likely to find them there.

Defendant was also informed of the nature of the process and of the fact that service was being attempted. C.f. Dosamantes, 500 S.W.2d at 237; Texas Industries, 521 S.W.2d at 133. Cox stated that he informed Defendant that he had court documents for him, and that he called out to Defendant, "You have been served," as Defendant was going up the escalator.[27] In addition, Defendant's personal manager admitted in his sworn affidavit that "[Cox] stated he was going to place an envelope on the floor in front of me and

---

[25]    Id.

[26]    Id.

[27]    Id.

the other persons that were with me."[28]   Considering the evidence
from both sides, Cox properly informed Defendant of the nature of
the service of process and that service was being attempted upon
him.   For the above reasons, the court finds that the service of
process effected upon Defendant on August 19, 2002, was sufficient
under Texas state law.

Because the service of process by Plaintiff has been deemed
sufficient, the court must now determine, through the evidence
Plaintiff has submitted, whether Plaintiff has established that the
service of process upon Defendant was proper.   Plaintiff has
produced the return of service on the citation served to
Defendant,[29] which the court may regard as *prima facie* evidence of
proper service upon Defendant in this case.   See O'Brien, 998 F.2d
at 1398; Home-Stake Prod. Co., 907 F.2d at 1017; Hicklin, 226 F.2d
at 414.   To support the contention of proper service, Plaintiff has
submitted a sworn affidavit from Plaintiff's process server
addressing the presence of Defendant, and detailing the method of
and circumstances surrounding the service.[30]   Plaintiff has also
submitted as evidence a sworn affidavit from its representative or
owner further corroborating the presence of Defendant at the time

---

[28]    Memorandum in Support of Defendant's Original Motion to Dismiss,
Docket Entry No. 11, Exhibit "C", Declaration of Bassam Nabulsi, ¶ 2.

[29]    Defendant's Notice of Removal, Docket Entry No. 1, Exhibit "A",
Citation and Return of Service.

[30]    Affidavit of Greg Cox, Docket Entry No. 21.

the service was effected.[31]    Based on this evidence, the court finds that Plaintiff has met its burden in establishing proper service in this case.  See Trans Chem. Ltd., 978 F. Supp. at 298; Norlock, 768 F.2d at 656.

In order to overcome Plaintiff's *prima facie* evidence, Defendant must produce "strong and convincing" evidence that service did not take place on August 19, 2002, as described by Cox.  See O'Brien, 998 F.2d at 1398; Home-Stake Prod. Co., 907 F.2d at 1017; Hicklin, 226 F.2d at 414.  In that regard, Defendant has attached his own affidavit and an affidavit of his personal manager, Bassam Nabulsi ("Nabulsi").

In Defendant's affidavit, he simply states, "I was not served with process as alleged in Plaintiff's proof of service.  I was not present when Mr. Cox attempted service as alleged in Plaintiff's proof of service."[32]  This statement in Defendant's affidavit pertaining to his absence at the time of service is wholly conclusory and lacks pertinent details, such as where Defendant was at the time Cox averred that service was effected.  The court notes that Defendant does not explicitly deny that he was *not* at Bush Intercontinental Airport on August 19, 2002, only that he was "not present" when Cox attempted service of process.  In light of the

---

[31]    Affidavit of Jimmy M. Abouzeinab, Docket Entry No. 22.

[32]    Memorandum in Support of Defendant's Original Motion to Dismiss, Docket Entry No. 11, Exhibit "B", Declaration of Defendant, ¶ 7.

discrepancy concerning the date when the process was served and the vague nature of the Defendant's affidavit, the court finds that Defendant's affidavit alone does not rise to the level of "strong and convincing" evidence rebutting Plaintiff's evidence of proper service.

Defendant also submitted Nabulsi's affidavit, in which he declared:

> "I was present on August 24, 2002, at the Houston Intercontinental Airport when an individual who did not identify himself approached me and a group of individuals. That unnamed person stated he was going to place an envelope on the floor in front of me and the other persons that were with me. At the same time the unnamed person called out Sheikh Zayed Al Nahyan (the name of Sheikh Issa Al Nahyan's father), followed by the statement, 'You're served!'"

> "I did not see the unnamed person place the envelope on the ground, and I did not see anyone in our party retrieve the envelope. After that we all boarded an airplane. Further, I am personally familiar with Sheikh Issa Al-Nahyan, and he was not present at the airport when the events described above occurred."[33]

Like Defendant, Nabulsi described events that occurred on August 24, 2002, five days after the service of process upon

---

[33]     Memorandum in Support of Defendant's Original Motion to Dismiss, Docket Entry No. 11, Exhibit "C", Declaration of Bassam Nabulsi, ¶¶ 2-3.

Defendant was effected as proven by Plaintiff's evidence.[34][35]
Neither Defendant nor Nabulsi aver where Defendant was on August
19, 2002. Nabulsi's declaration employs a spelling for
Defendant's name which is different from that used in Defendant's
own affidavit and the captions of Defendant's pleadings, a fact
which has not been explained.[36] Nabulsi also claims that Cox
called out the wrong name, that of Defendant's father, Sheikh
Zayed Al Nayhan, instead of the Defendant's name, Sheikh Essa
Zayed Al Nayhan, however, this allegation fails to provide an
adequate basis that the wrong person was served because Defendant
must do more than simply contradict Cox's affidavit of service to
meet his burden on this issue. Even if the court were to assume
that Nabulsi's descriptions of the events at the airport occurred
on August 19, 2002, and not August 24, 2002, Nabulsi's affidavit
lacks the specificity required to be considered "strong and
convincing" evidence rebutting proper service on the Defendant.

---

[34]     See Id. Mr. Nabulsi stated that he "was present on August 24, 2002
at the Houston Intercontinental Airport." Whether he was at the airport on that
date is not of consequence to this case, and neither are the events that he
proposes happened on August 24, 2002.

[35]     See Defendant's Notice of Removal, Docket Entry No. 1, Exhibit "A",
Citation and Return of Service. Because Plaintiff has met its burden of proving
proper service, it is assumed by this court that August 19, 2002 is the correct
date for service of process in this case.

[36]     See Docket Entry No. 11, Exhibit "C", Declaration of Bassam Nabulsi,
¶ 2. Mr. Nabulsi's declaration shows the spelling of Defendant's name to be
"Sheikh Issa Al Nahyan," while Defendant's own declaration, as well as the
captions of Defendant's pleadings, spell Defendant's name "Sheikh Essa Zayed Al-
Nayhan."

For these reasons, the court finds that Defendant has not rebutted Plaintiff's evidence of proper service of process as required by law, and therefore denies Defendant's Rule 12(b)(5) motion to dismiss.

## V. Conclusion

Based on the foregoing, the court **DENIES** Defendant's Amended Motion to Dismiss.

SIGNED at Houston, Texas, this _19^h_ day of August 2003.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

13